David A. Garcia CA Bar No. 218356
david.garcia@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:  714-800-7900
Facsimile:   714-754-1298

Stephen A. Dolar CA Bar No. 339637
stephen.dolar@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA  92122
Telephone:  858-652-3100
Facsimile:   858-652-3101

Attorneys for Plaintiff
United Auto Credit Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| UNITED AUTO CREDIT CORPORATION,<br><br>                    Plaintiff,<br><br>            v.<br><br>JESSICA STEWART, an individual; JULIAN HICKS, an individual; VEROS CREDIT LLC, a Nevada corporation; and DOES 1-25,<br><br>                    Defendants. | Case No. 8:25-cv-65-RGK-ADS<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**(REQUEST FOR JURY TRIAL)**<br><br>**1. MISAPPROPRIATION OF TRADE SECRETS**<br>**2. VIOLATION OF THE DEFEND TRADE SECRETS ACT**<br>**3.  BREACH OF FIDUCIARY DUTY**<br>**4. BREACH OF DUTY OF LOYALTY**<br>**5. UNFAIR BUSINESS PRACTICES**<br>**6. FRAUDULENT CONCEALMENT**<br><br>Complaint Filed:  January 14, 2025<br>Trial Date:         None Set<br>District Judge:     Hon. R. Gary Klausner<br>Magistrate Judge: Hon. Autumn D. Spaeth |

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# INTRODUCTION

1.      This action arises because former employees deceived and competed with their former employer, misappropriated their former employer's confidential and proprietary information and trade secrets, and misused, and continues to misuse, the information to benefit themselves and the competitor they joined. After breaching duties owed to their employer by surreptitiously competing with UACC while they were still employed, Defendants resigned and are now in possession of two categories of protectable information and documents: (1) trade secrets and (2) non-trade secret confidential and proprietary information. UACC seeks redress for the misappropriation of both protectable interests as well as Defendants' unfair business practices and unlawful conduct under the common law.

2.      UACC is a leader in the automotive finance industry and has been serving dealers and customers nationwide since 1996. The automotive loan industry is a highly competitive business that relies on dealer partnerships and relationships, risk management and assessment, and data analytics to maintain a competitive advantage. To stay ahead of the competition, UACC has invested time and resources in developing and protecting trade secrets and confidential information that have independent economic value from not being generally known.

3.      Two former employees, Defendants Jessica A. Stewart ("Stewart") and Julian Hicks ("Hicks"), engaged in wrongful conduct over the course of their remaining weeks of employment at UACC that give rise to statutory and common law claims. Namely, independent of misappropriating UACC's confidential and trade secret information, Defendant Stewart leveraged her leadership position and management role to sabotage UACC and conceal her true loyalty was to UACC's direct competitor, Defendant Veros Credit LLC ("Veros Credit").

4.      While still employed by UACC, Defendants Stewart and Hicks competed, obstructed, and interfered with UACC's business operations to prime themselves to exploit opportunities upon departure.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

5.      Shortly after copying and forwarding confidential information and trade secrets to their personal email accounts, Defendants Stewart and Hicks resigned from UACC and joined Defendant Veros Credit. Defendant Veros Credit acted in concert with Defendants Stewart and Hicks and is knowingly benefitting from UACC's confidential information and trade secrets along with Defendant Stewart's and Hicks' unlawful misconduct unrelated to their misappropriation of trade secrets.

## JURISDICTION AND VENUE

6.      UACC is a corporation organized and existing under the laws of the State of California and has its principal place of business in Orange County, California.

7.      Defendant Stewart is, and at all times herein mentioned was, an individual who maintains a primary place of residence in Huntington Beach, California. Jessica A. Stewart was previously employed by Plaintiff as a Divisional Manager from March 2022 to December 4, 2024..

8.      Defendant Hicks is, and at all times herein mentioned was, an individual who maintains a primary place of residence in San Diego, California. Julian Hicks was previously employed by Plaintiff as an Area Manager from June 2022 to December 13, 2024.

9.      Defendant  Veros Credit is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located at 2333 N. Broadway, Ste 400, Santa Ana, California 92706.

10.      Plaintiff is ignorant of the true names and capacities of defendant sued herein as DOES 1 through 25, inclusive, and therefore sue those defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

11.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, defendants DOE 1 through DOE 25 were agents, servants, and employees of Defendants, and in doing the things hereinafter alleged were acting in

the scope of their authority as agents, servants, and employees, and with the permission and consent of Defendants.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise from a federal question under the Defend Trade Secrets Act.

13.    The Court has supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1367 as each is related to the claim for which original federal question jurisdiction attaches, and each forms part of the same claim or controversy under Article III of the United States Constitution.

14.    Each defendant is subject to the personal jurisdiction of this Court because each individual defendant is a resident of the State of California and VEROS's principal place of business is in California.

15.    Venue is proper before this Court because all defendants reside in the state of California and at least one defendant resides in this District.

16.    Venue is also proper before this Court because a substantial part of the events and omissions giving rise to the claims set forth herein occurred in this District.

## FACTUAL ALLEGATIONS

17.    UACC provides complete non-prime automotive lender services to dealers and their customers across the United States since 1996.

18.    The business is performed by having UACC sales personnel develop and maintain confidential and trade secret information and access to key contacts to maintain relationships with automotive dealers throughout their respective territories. Dealer information and dealer and customer performance data are used to develop and manage UACC's proprietary lending programs, which are facilitated through its sales personnel and its proprietary software. By using customer data and metrics information, UACC can extend financing options to dealers' customers who may otherwise have difficulty qualifying for auto financing.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

19.     UACC invests substantial time, money, and effort developing, compiling, and maintaining information regarding its dealers and customers.

20.     UACC's success is attributable to the proprietary lending analysis programs and metrics, key dealer contacts, goodwill, relationships developed by UACC, repeat business of UACC's customers and dealers, and to UACC's compensation plans for its employees.

21.     In connection with its business, UACC has developed and/or acquired and maintained certain business information, including, but not limited to: profitability of UACC's individual dealers; UACC's internal grading and assessment of dealers; dealer prospects; dealer lists and documents containing individual contact information; information on pricing, costs, margins, purchase histories, sales, allowances, discounts, and pricing policies; marketing and product information; sales data; credit terms, policies, and information; lending information and lender systems; promotional programs; information on customer likes, preferences, dislikes, purchase patterns and dealer contract renewal information; financial information concerning UACC and its customers; internal wage and compensation plans and programs and rates for its employees; and UACC's business, sales and marketing strategies and plans ("confidential information").

22.     The confidential information gives UACC a competitive advantage not enjoyed by other persons not in possession of the confidential information. The confidential information is valuable because it is unknown to others, including UACC's competitor, Defendant Veros Credit, and UACC has made efforts to keep the information secret.

23.     The confidential information is not generally known to, or readily ascertainable through proper means by individuals outside of UACC. The confidential information is proprietary and not public.

24.     UACC has invested considerable time, effort, and expense valued in excess of $75,000 in establishing and developing the confidential information, and in

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

developing valuable and extensive trade, business, trade name, and goodwill among its customers and suppliers in developing contacts and business relationships with its dealers and suppliers.

25.    UACC used, and continues to use, reasonable and diligent efforts to maintain and protect the confidential information, including the use of employment agreements with confidentiality provisions, password protected computer systems and limited distribution policies so only employees within UACC who need the information to perform their job duties have access.

26.    The confidential information constitutes a trade secret under California law and the DTSA.

27.    Defendant Jessica Stewart worked for UACC as a Division Manager of Sales & Marketing. She worked for UACC from March 14, 2022, to December 4, 2024.

28.    In her Divisional Manager position, Defendant Stewart was entrusted with sensitive information and the proprietary financial plans and strategies of UACC.

29.    Defendant Stewart acknowledged receipt, on May 15, 2023, of UACC's Employee Handbook which included its confidentiality policy applicable to Defendant Stewart. The confidentiality policy states, in pertinent part:

> "During the course of employment, an employee may become aware of confidential information about the Company's business, including but not limited to, information regarding Company finances, pricing, products, product development, software and computer programs, marketing strategies, strategic plans, suppliers, customers, potential customers, personnel ("Confidential Information"). Confidential Information also includes financial records; business, marketing, and strategic plans; personnel and payroll records regarding current and former employees; the identity of, contact information for, and any other account information on customers, vendors and suppliers; inventions, programs, trade secrets, formulas, techniques and processes; and any other documents or information regarding the Company's operations, procedures or practices. An employee also may become aware of similar confidential information belonging to the Company's customers, vendors, affiliates, suppliers, stockholders. It is extremely important that all such information remain confidential and particularly not be disclosed to our competitors. **Any employee who improperly copies, removes (whether physically or electronically), uses, or discloses confidential information to anyone outside of the Company, may be subject to disciplinary action up to and including termination**."

(UACC Confidential Company Information Policy [Boldface added].) Additionally, Defendant Stewart and Defendant Hicks also signed UACC's Employee Inventions and Proprietary Information Agreement, agreeing to hold confidential, proprietary information of UACC in strict confidence.

30.     In addition to UACC's trade secrets, Defendant Stewart and Defendant Hicks obtained, misused, and disclosed protectable confidential and proprietary information that are *not* trade secrets. Defendant Stewart and Defendant Hicks obtained, misused, and disclosed UACC's confidential and proprietary information through deceptive means to undermine and disrupt UACC's business plans for growing market share in identified regions. For the theft of UACC's protectable confidential and proprietary information that are *not* trade secrets, Defendants Stewart and Hicks violated their common law duties to UACC and engaged in unfair business practices.

31.     In the final weeks of her employment, knowing in advance that she would resign from UACC to join its competitor, Defendant Stewart forwarded at least 30 files containing confidential and trade secret information to her private email account. Defendant Stewart sought to steal confidential information and trade secrets until the day of her resignation. Meanwhile, Defendant Hicks stole information within 24 hours prior to resigning.

32.     Defendants are misusing UACC's trade secrets and confidential and proprietary information. Defendant Stewart sent herself multiple documents on the day of her resignation to continue using while she was employed by Defendant Veros. Glaringly, one particular document, "Sales PG Guide v07302024.pdf," was sent to her private email account 6 minutes prior to her resignation.

33.     To date, Defendant Stewart and Defendant Hicks have not allowed a forensic inspection of their email accounts or devices whatsoever.

34.     Furthermore, Defendant Stewart engaged in materially distinct actionable fraud and deceit independent of her conduct relating to misappropriation of UACC's

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

confidential information and trade secrets. Specifically, Defendant Stewart used her position to attend a multi-day strategic meeting in Texas from December 2 to December 4, 2024, under the guise of benefitting UACC and causing UACC to incur expenses on her behalf. Further, Defendant Stewart was compensated by attending the strategic meetings on UACC company time when in reality, by the time Defendant Stewart attended the meetings, her loyalty had transferred to Defendant Veros Credit and she knew that she would resign.

35.    Specifically, on December 2, 2024, Defendant Stewart traveled, at UACC's expense, from California to Fort Worth, Texas and on December 3, 2024, attended an all-day strategic management sales meeting and a dinner meeting with UACC's President. The UACC Managers met to analyze and finalize, among other things, the "Current Plan Problems & Proposed Plan Responses," covering sales compensation plans being implemented by UACC to resolve key compensation issues. For example, the Plan document covered these items:

- Current Primary Plan Overview" and "Proposed Plan Overview" metrics, dollar amounts and percentages for variable income to be earned by sales personnel;
- Payment schedules and proposed changes to the amounts and financial metrics of the compensation plan for key sales personnel;
- "Plan Details" for new pay scales to the Area Managers.

36.    During the meeting on December 3, 2024, Defendant Stewart copied the "Current Plan Problems & Proposed Plan Responses" document and, without authorization, sent it to her private email account, at: jessica***@gmail.com [the complete email address has been redacted].

37.    Plaintiff also discovered that, in violation of policy and in complete disregard of UACC's property rights, Defendant Stewart had copied dozens of confidential business documents and, without authorization, on November 26, 2024,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

and on November 27, 2024, she forwarded them to her private email account (jessica****@gmail.com), including, without limitation:

- "1st Wave Tracking.xlsx" (which included the "Findings and Action Plan" and related notes for over one hundred dealers);
- "Market Penetration Strategy: CA Market";
- "2024 02 07_CA Market Initiative update_LBE edits (2).pptx";
- "CA Market Initiative";
- "CA Market Penetration Point Predictive Risk Team (1).xlsx";
- "Sun Belt Regional DM Meeting Q1 2024(1).docx";
- "UACC-Standard Rate Sheet-California 0323.pdf";
- "Dealer Segmentation & Dealer Management Approach";
- "2024_02_07_CA Market initiative update_LBE edits.pptx"; and
- "Overall Takeaways – San Diego 1.31.24.docx".

These documents contained confidential information, including, without limitation, valuable and confidential UACC dealer, customer, and potential customer information, marketing strategies, and pricing data representing hundreds of hours of UACC employee work time to prepare and to use solely for UACC business purposes.

38. For example, the Dealer Segmentation & Dealer Management Approach document contains information about how Plaintiff: (1) manages newly enrolled dealers; (2) establishes a lifecycle framework for developing dealer relationships; and (3) establishes a framework for managing dealer performance. Moreover, the document provides UACC's criteria for evaluating dealer performance and entering watchlist process. Misappropriation of these trade secrets will cause or threaten damage to UACC.

39. On or about December 3, 2024, Defendant Stewart forwarded another business document of proprietary UACC trade secrets and information, titled "JStew D Dealer Title Floats" to her private email account. Critically, this document contains UACC's internal dealer grades, internal analysis of the pre-tax profitability of specific

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

dealers, internal assessments regarding UACC's pre-tax income on specific dealers, and the number of titles that UACC allows the dealers to be trusted to deliver after receiving financing ("title floats"), thereby indicating the financial stability UACC has attributed to the dealer based on UACC's prior experience and analysis. The dealers on this document are identified by dealer name, dealer code, title float, area representatives, dealer grades, and deals by specific monthly intervals.

40.     The trade secrets and information that Defendants took with them and, based on information and belief, are misusing without permission, have independent economic value because, among other reasons, competitors can focus opportunistically on which UACC dealers to poach, save time in not approaching dealers ranked as credit-risky by UACC, save time on structuring loans and services to specific dealers, and approach key decision makers at each dealers with the contact list that Defendant Hicks took with him. The public and competitors would not otherwise have access to Plaintiff's internal profitability, pricing, and costs data with respect to specific customers/dealers, and Defendants would and did benefit from acquiring improperly and misusing the following information contained in the documents listed above and in additional UACC documents and information that Defendants Stewart and Hicks took with them to Defendant Veros Credit:

- details about specific customer/dealer profitability compiled by UACC;
- the customized and unique fees that UACC charges and charged specific dealers for its services and loans;
- the credit worthiness rankings that UACC assigned to specific dealers based on independent research and evaluation of individual estimated dealers costs and profits;
- UACC's pre-tax profitability assessment regarding specific dealers, used to determine risks of making loans to specific dealers;
- Individual grades assigned by UACC showing creditworthiness and lending risks assigned to specific dealers; and

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- UACC specific vehicle loan duration terms provided to individual dealers.

Information related to cost and pricing has commercial value and can be trade secret. (*Courtesy Temporary Service, Inc. v. Camacho*, (1990) 222 Cal.App.3d 1278, 1288, [billing and markup rates "irrefutably" of commercial value]; *Lumex, Inc. v. Highsmith* (E.D.N.Y.1996) 919 F.Supp. 624, 628–630 [pricing, costs, and profit margins treated as trade secrets].)

41.    UACC dealer grades are correlated with specific dealer discounts as well as UACC's internal assessments for which dealerships UACC will invest time in growing. In essence, UACC's dealer grades provide a roadmap for any competitor to strategically and systematically undermine UACC's competitive position in the market. Possession of UACC's dealer grades provide insight into the discount relationship between UACC and a specific dealer, whether UACC views the dealer as especially profitable, and critically, insight into which dealerships a competitor should pursue.

42.    As another example, the "Overall Takeaways – San Diego 1.31.24.docx" document that Defendant Stewart took without permission, contains information on which dealers pay certain amounts for UACC's services/loans, such as which dealer "does deals with $500-600 discounts" and "$500 or less avg discount." This document also contains information regarding UACC's analysis on other lenders available to the dealer and the impact of UACC's competitiveness with the dealer. Information regarding the terms and conditions a specific dealer will do business is also contained in this document.

43.    UACC's marketing strategies and plans can also be trade secret if it would allow Defendants to predict and counter UACC's business plans: specifically "marketing strategy, plans, and techniques; and Schlage's five-year strategic plan [are trade secret]. This information would be valuable if known by a competitor because it would allow the competitor to predict and counter Schlage's advertising and

marketing. Schlage's marketing strategy and plans (including its five-year strategic plan) constitute trade secrets under California law." (*Whyte v. Schlage Lock Co.*, (2002) 101 Cal.App.4th 1443).

44.    On December 4, 2024, Defendant Stewart abruptly left early from the in-person meetings in Fort Worth, Texas after she had obtained copies of sensitive UACC documents and flew home to California, and then resigned from UACC that same day.

45.    Based on information and belief, Defendant Stewart accepted an offer from Defendant Veros Credit as the "VP of Sales for the Western Region" prior to attending the in-person meetings with UACC in Fort Worth, Texas, and after resigning from UACC, began to perform similar duties for Veros Credit that she previously was performing for UACC.

46.    Simply put, Defendant Stewart concealed that her loyalty was to Defendant Veros Credit and attended the December meetings to further her efforts to compete with, sabotage, and undermine UACC's business operations.

47.    Based on information and belief, Defendant Stewart is misusing the sensitive business information of UACC for her own personal benefit: she is using the confidential information of UACC to enable her to form a competitive internal and external sales team at Defendant Veros Credit, and to help fill such roles as "VP of Credit" at Defendant Veros Credit. Based on information and belief, Defendant Stewart is misusing the sensitive business information that she took from UACC to benefit Defendant Veros Credit, including by using UACC's employee compensation plans and confidential information to advise Defendant Veros Credit on key compensation metrics being paid to UACC employees. On separate occasions, Plaintiff sent Defendant Stewart first a letter on December 17, 2024, and then correspondence on December 30, 2024, reminding her that specific law prevents her from misusing and misappropriating UACC's confidential information, and demanding that she immediately cease and desist all activities that violate UACC's property rights. UACC asked for specific cooperation from Defendant Stewart, such

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

as her acknowledgement of her obligation to preserve evidence, the list of all UACC documents within her possession, her cooperation to delete forensically all copies of UACC within her possession, but Defendant Stewart has not returned the UACC documents that she took, she has not signed the evidence preservation acknowledgement, and she has not reasonably cooperated.

48.    Defendant Julian Hicks also copied confidential business documents comprised of key contacts at dealers with whom UACC had established business relationships and, without authorization, on December 12, 2024, Defendant Hicks forwarded the UACC proprietary information that he had copied, the valuable dealer contact list, to his private email account (julian****@gmail.com [the complete email has been redacted]). Based on information and belief, Defendant Hicks became an employee of Defendant Veros Credit shortly after he had taken UACC's key dealer contact list.

49.    Defendant Veros Credit is knowingly enjoying the fruits of Defendant Stewart's and Defendant Hicks' theft of UACC's trade secrets and confidential information, and the actions that Defendants Stewart and Hicks took on behalf of Defendant Veros Credit to set up a competitive venture against UACC while charging UACC for that effort. Further, Defendant Veros Credit is enjoying the fruits of Defendant Stewart's and Defendant Hicks' unlawful conduct of competing with UACC during their employment with UACC as well as their solicitation of customers and personnel. Plaintiff sent Defendant Julian Hicks an initial written request on December 18, 2024, and then correspondence on December 30, 2024, reminding him that specific law prevents him from misusing and misappropriating UACC's confidential information and demanding that he immediately cease and desist all activities that violate UACC's property rights. The correspondence asked for Defendant Hicks' cooperation to forensically purge and return the information of UACC within Hicks' possession. Plaintiff requested his acknowledgement that all

1  UACC files would be returned and the related correspondence would be preserved for

2  UACC inspection, but he did not cooperate.

3    50.    On or about December 17, 2024, Plaintiff sent Defendant Veros Credit a

4  letter reminding it that it cannot benefit or profit from the misuse of UACC's

5  Confidential Information and demanding that it cooperate in forensically purging and

6  returning the information of UACC within its possession. Plaintiff did not receive a

7  response to its December 17, 2024, letter.

8    51.    By usurping UACC's confidential information, Defendants, and those

9  working in concert with them, have created an unlawful and unfair competitive

10  advantage over UACC in that they are now privy to UACC's confidential and

11  proprietary trade secret information pertaining to UACC's dealers, customers, costs,

12  and compensation and marketing plans. Defendants' knowledge of the UACC's

13  confidential and trade secret information creates a competitive disadvantage because

14  Defendants are using UACC's proprietary information to unfairly compete and take

15  business away from Plaintiff.

16    52.    The trade secrets and confidential and proprietary information taken by

17  Defendants provide UACC an actual or potential advantage over its competitors and

18  are valuable to the operation of UACC's enterprise. That is, the trade secrets and

19  confidential and proprietary information have value to UACC and others who do not

20  possess them. For example, the documents contain:

21    • Dealer discounts and pricing between UACC and specific dealers

22    identified by location, vehicle, and UACC Customer Score. The

23    knowledge of dealer discounts and pricing allows competitors to

24    assess and undercut UACC's competitiveness in the market;

25    • information that can be used to generate revenue and are not publicly

26    available;

27    • information regarding specific terms of UACC deals that would allow

28    competitors to offer alternative terms;

13

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- program, fee, and pricing assessments for specific regions and locations that would allow competitors to undermine UACC's market penetration; and

- relationship assessments identified by dealership location and name that discusses the profitability of products, fee concerns, and preferences that would provide the blueprint for competitors to threaten UACC's relationship with the identified dealerships.

53.    Defendant Stewart and Defendant Hicks, in the final weeks of employment, took information to solicit customers and employees from UACC while they were still employed by UACC. Defendants Stewart and Hicks competed with UACC and labored to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

54.    Defendants Stewart and Hicks were motivated to take dealers and key personnel to impress their new employer, Defendant Veros Credit, and benefit themselves in their new positions. By obstructing, impeding, and interfering with UACC business operations while employed by UACC, Defendants Stewart and Hicks positioned themselves and Defendant Veros Credit to exploit the emerging opportunities.

55.    As part of her efforts, Defendant Stewart specifically attended the December meetings to dine with, and solicit, key managers and high performing personnel. Defendant Stewart attended a dinner prior to her December 4, 2024, resignation where she mingled with UACC's President and other executives to enhance her personal image. Thereby, she would use her apparent elevated status to influence key employees to move with her to Defendant Veros Credit. That is, Defendant Stewart used the December meetings as a vehicle to further compete with UACC during her employment and sabotage and interfere with UACC's business plans.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

56.    Based on information and belief, as early as November 2024, Defendant Stewart took action to setup her competing department at Defendant Veros Credit to compete with Plaintiff even while she was still employed by UACC including by, but not limited to, conducting meetings with Defendant Veros Credit to coordinate on the timing to recruit key employees of Plaintiff. As part of her scheme, Defendant Stewart conducted a meeting with Defendant Veros Credit's recruiter, Elva Cook, among others whose identities will be revealed through discovery.

57.    Defendant Stewart coordinated her departure date to maximize her success of covertly soliciting clients and key employees while still employed by UACC in order to establish a competing venture at Defendant Veros Credit.

58.    Based on information and belief, Defendant Stewart's coordinated effort enabled her to negotiate a higher salary and title, favorable compensation plan, and additional non-monetary benefits.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE DEFEND TRADE SECRETS ACT**

### **[18 U.S.C. § 1836 et seq.]**

### **(Against All Defendants)**

59.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 58 of this Complaint, as though fully set forth herein.

60.    The Defend Trade Secrets Act ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." (18 U.S.C. § 1836(b)(1).)

61.    Plaintiff's trade secrets relate to financial lending services used or intended for use in interstate and foreign commerce.

62.    In her position as a sales manager of Plaintiff, Defendant Stewart had access to valuable confidential business information of Plaintiff.

63.    Upon information and belief, it is hereby alleged that Defendant Veros Credit was a co-conspirator with Defendant Stewart, and knew or should have known that Defendant intended to improperly and illegally misappropriate Plaintiff's trade secrets, in order to unjustly enrich themselves.

64.    Upon information and belief, it is hereby further alleged that Defendant Veros Credit agreed with Defendant Stewart's actions and intended for Defendant Stewart to commit the illegal misappropriation of trade secrets and provide those trade secrets to Defendant Veros Credit.

65.    Upon information and belief, it is hereby further alleged that Defendant Hicks agreed with Defendant Stewart's actions and intended for Defendant Stewart to commit the misappropriation of confidential information of UACC for the benefit of Defendant Veros Credit. Without authorization from UACC, Defendant Hicks emailed to his personal account the list of the key contact information for dealers that engaged in prior business transactions with UACC, and then he went to work for Defendant Veros Credit days after he had taken such information.

66.    Plaintiff's confidential project financial metrics, profitability of customer deals, staffing costs, and contributions of key employees, is not generally available in the public domain.

67.    Plaintiff has spent significant money, time, and effort acquiring and developing its trade secrets, including those trade secrets that Plaintiff uses to secure new business from existing dealer customers.

68.    Plaintiff's trade secrets have both actual and future economic value arising from the significant market advantage they provide.

69.    Plaintiff has taken reasonable steps to protect the secrecy of its confidential information, including setting up passwords to restrict access to email communications, requiring employees to acknowledge confidentiality policies, establishing a confidentiality policy in the employee handbook, restricting levels of

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

access to its trade secrets to limited employees, and expressly instructing the Defendants not to share customer lists and pricing information with anyone.

70. The specific trade secrets misappropriated by Defendants include:

- Plaintiff's key dealer contact information, dealer performance and the nature of the deals that were being originated via Plaintiff's dealers and serviced by Plaintiff, including the names, addresses, phone numbers, and email addresses of key decision makers. (*State Farm Mut. Automobile Ins. Co. v. Dempster*, (1959) 174 Cal.App.2d 418 ("'[T]he names, addresses and telephone numbers of policyholders' are protectable trade secrets.").)

- The underlying costs, profit margins, performance, and pricing information, for key deals of Plaintiff's dealers being serviced exclusively by Plaintiff. (*Whyte v. Schlage Lock Co.*, (2002)101 Cal.App.4th 1443, 1452 (holding that "pricing," "profit margins," "pricing concessions" are protectable trade secrets).)

- The impact on Plaintiff's project costs and pricing comprised of Plaintiff's employee's costs and incentive pay to key employees.

- Training materials for sales and credit personnel and sales strategies for Plaintiff's dealer network.

71. Based on information and belief, in or around December 3, 2024, and prior to abruptly ending her employment with Plaintiff, Defendant Stewart took Plaintiff's confidential trade secrets to create a new inside sales team at Defendant Veros Credit and expand its external sales team to compete with Plaintiff.

72. Defendants' conduct is in violation of the Defense Trade Secrets Act of 2016, adopted in 18 U.S.C. § 1839.

73. As a direct and proximate result of the actions of Defendants, Plaintiff has been injured and Defendants have been unjustly enriched.

74.    UACC has been damaged, and will continue to be damaged, because, *inter alia*, the documents contain specific dealer risk-credibility data, profit and margin assessments by UACC of specific dealers, and key contact information. In short, Defendants took and are misusing proprietary data that any competitor could benefit from to grow a competitive venture without paying for the time and expense of acquiring or developing this information:

- Dealer discounts and pricing between UACC and specific dealers identified by location, vehicle, and UACC Customer Score. The knowledge of dealer discounts and pricing allows competitors to assess and undercut UACC's competitiveness in the market;
- information that can be used to generate revenue and are not publicly available;
- information regarding specific terms of UACC deals that would allow competitors to offer alternative terms;
- program, fee, and pricing assessments for specific regions and locations that would allow competitors to undermine UACC's market penetration; and relationship assessments identified by dealership location and name that discusses the profitability of products, fee concerns, and preferences that would provide the blueprint for competitors to threaten UACC's relationship with the identified dealerships.

75.    Defendants' acquisition and subsequent use and disclosure of Plaintiff's trade secrets was a substantial factor in causing Plaintiff's injury and has resulted in Defendants' unjust enrichment.

76.    Defendants' wrongful conduct in misappropriating Plaintiff's confidential information and trade secrets, unless and until enjoined and restrained by order of this Court, has and will cause great and irreparable injury to Plaintiff's business as Plaintiff faces the threat of losing substantial revenue, market share and

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

advantage, and will continue to do so in the future if its valuable trade secrets are utilized or disclosed by Defendants, or any other third party.

77.     Plaintiff is entitled to actual damages from Defendants, and each of them, and for attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT**

**[Cal. Civ. Code § 3426 et seq.]**

**(Against all Defendants)**

78.     UACC hereby incorporates by reference and re-alleges paragraphs 1 through 58 of this Complaint, as though fully set forth at this point.

79.     California Civil Code section 3425.1, subdivision (b) defines trade secret misappropriation as: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (A) Used improper means to acquire knowledge of the trade secret; or (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

80.     At all times relevant to this Complaint, UACC is/was the rightful owner of its confidential information, including, but not limited to, its trade secrets.

81.     The confidential information has independent economic value in that, among other things: (a) UACC has invested time, effort, and money in developing these trade secrets; and (b) these trade secrets enable UACC to provide its dealer

customers with services which are more effective, efficient, and financially attractive than its competitors. As a result, these trade secrets have economic value in that UACC was/is able to more effectively and efficiently serve its clients than competitors who do not have access to these trade secrets.

82.    At all times relevant to this Complaint, UACC has made reasonable efforts to ensure that is trade secrets remained confidential, by not disclosing such information to the public or UACC's competitors, and by restricting the use of such information by UACC's employees.

83.    In her position with UACC, Defendant Stewart was permitted access to and utilized UACC's trade secrets in its effort to facilitate the delivery of UACC's services and to otherwise service the needs of UACC's current or prospective dealers and customers, subject to the confidentiality policy set forth in the Employee Handbook to which Defendant Stewart subscribed.

84.    Based on information and belief, Defendant Stewart misappropriated and wrongfully conveyed, transmitted, and used UACC's trade secrets and other confidential business information when she used that information to benefit herself and Defendant Veros Credit, and she has refused to return it. Defendants used the confidential information of UACC to solicit business for their own benefit from UACC's current and prospective dealers. Defendants used the Confidential Information developed by UACC, to unlawfully compete against UACC. Defendants' conduct constitutes a violation of the California Uniform Trade Secrets Act (Civ. Code §§ 3426, et seq.).

85.    Upon information and belief, it is hereby further alleged that Defendant Hicks agreed with Defendant Stewart's actions and intended for Defendant Stewart to commit the misappropriation of confidential information of UACC for the benefit of Defendant Veros Credit. Without authorization from UACC, Defendant Hicks emailed to his personal account the list of the key contact information for dealers that engaged

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

in prior business transactions with UACC, and then he went to work for Defendant Veros Credit days after he had taken such information.

86.    **Civil Conspiracy with Defendant Veros Credit:** Plaintiff was harmed by Defendants' violation of its rights, as set forth above, because each was part of a conspiracy to commit such misconduct. Defendants each agreed to commit wrongful acts. Such an agreement is implied by the actions of Defendant Stewart to share Plaintiff's business plans with Defendant Defendant Veros Credit, to use Plaintiff's trade secrets and valuable UACC information to solicit dealers of Plaintiff to join a competing venture to take business opportunities belonging to UACC based, in large part, on the misuse of Plaintiff's secret and valuable business information. Defendants and DOES Defendants agreed with each other to interfere and commit these unfair business practices.

87.    As a direct and proximate result of Defendants' actions, Plaintiff has been injured and Defendants have been unjustly enriched.

88.    Defendants, at all relevant times, were aware, or had reason to know, that the Confidential Information they were acquiring, using, and disclosing were trade secrets that had been acquired by improper means and were being improperly disclosed.

89.    As a proximate result of Defendants' conduct, UACC has been damaged in an amount according to proof at time of trial.

90.    UACC has been damaged, and will continue to be damaged, because, *inter alia*, the documents contain:

- Dealer discounts and pricing between UACC and specific dealers identified by location, vehicle, and UACC Customer Score. The knowledge of dealer discounts and pricing allows competitors to assess and undercut UACC's competitiveness in the market;

- information that can be used to generate revenue and are not publicly available;

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- information regarding specific terms of UACC deals that would allow competitors to offer alternative terms;

- program, fee, and pricing assessments for specific regions and locations that would allow competitors to undermine UACC's market penetration; and

- relationship assessments identified by dealership location and name that discusses the profitability of products, fee concerns, and preferences that would provide the blueprint for competitors to threaten UACC's relationship with the identified dealerships.

91.    UACC's marketing strategies and plans can also be trade secret if it would allow Defendants to predict and counter UACC's business plans: specifically "marketing strategy, plans, and techniques; and Schlage's five-year strategic plan [are trade secret]. This information would be valuable if known by a competitor because it would allow the competitor to predict and counter Schlage's advertising and marketing. Schlage's marketing strategy and plans (including its five-year strategic plan) constitute trade secrets under California law." *Whyte v. Schlage Lock Co.*, (2002) 101 Cal.App.4th 1443.

92.    Defendants' acquisition and subsequent disclosure of Plaintiff's Confidential Information and trade secrets was a substantial factor in causing Plaintiff's injury, and has resulted in Defendants' unjust enrichment.

93.    In engaging in the wrongful conduct described herein, Defendants have acted and continue to act in concert with one another in conduct that is willful, wanton, despicable, intentional, malicious, oppressive, and fraudulent, thus entitling UACC to punitive and exemplary damages against Defendants, and each of them, in an amount sufficient to punish each separately for such conduct pursuant to California Civil Code section 3426.3(c).

94.    Further, as a result of Defendants' conduct, UACC is further entitled to an award of reasonable attorneys' fees and costs pursuant to California Civil Code section 3426.4.

95.    Finally, UACC is also entitled to injunctive relief pursuant to California Civil Code section 3426.2, and requests that the Court issue a preliminary injunction, and permanent injunction that:

 a.  Prohibits Defendants, and each of them, and anyone working in concert with them, from using, disclosing, or transmitting UACC's sensitive, proprietary, or confidential information or trade secrets specifically identified above, including but not limited to UACC's dealer information;

 b.  Requires Defendants, and each of them, and anyone working in concert with them, to immediately account for and return to UACC all original documents, records, and materials containing or reflecting such information, and all copies thereof;

 c.  Prohibits Defendants, and each of them, and anyone working in concert with them, from selling any product or service based in whole or in part on any sensitive, confidential, or proprietary information or trade secret belong to UACC;

 d.  Requires Defendant and each of them, and anyone working in concert with them, to submit their computers and electronic devices to a computer forensic expert of UACC's choosing to ensure that UACC's trade secrets and confidential or proprietary data do not exist on those computers or devices;

 e.  Except and only to the extent otherwise required by Court order, prohibits Defendants, and each of them, and anyone working in concert with them, from destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect any of

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    UACC's sensitive, proprietary, or confidential information or trade

2    secrets; and

3    f.    Prohibiting or requiring any and all other such acts as the Court deems

4    appropriate for injunctive relief.

5    96.    Defendants' wrongful conduct in misappropriating Plaintiff's

6    Confidential Information and trade secrets, unless and until enjoined and restrained by

7    order of this Court, has and will cause great and irreparable injury to Plaintiff's

8    business as Plaintiff faces the threat of losing substantial revenue, market share and

9    advantage, and will continue to do so in the future if its valuable trade secrets are

10    utilized or disclosed by Defendants, or any other third party.

11    97.    Alternatively, Plaintiff seeks an award of reasonable royalties under Civil

12    Code section 3426.3, subdivision (b), if neither actual loss nor unjust enrichment are

13    provable.

14    **THIRD CAUSE OF ACTION**

15    **BREACH OF DUTY OF FIDUCIARY DUTY**

16    **(Against Defendant Stewart)**

17    98.    Plaintiff incorporates by reference paragraphs 1 through 58 to this cause

18    of action.

19    99.    UACC is the owner of non-trade secret, but nonetheless protectable,

20    confidential and proprietary information. This information is exclusively owned by

21    UACC. UACC is the owner of this information with the exclusive right to possession

22    of it. For the protectable information misappropriated by Defendant Stewart, UACC

23    bases its breach of duty of fiduciary duty claim solely and entirely on the non-trade

24    secret confidential and proprietary information taken by Defendant Stewart.

25    100.    Moreover, Defendant Stewart breached her duty of fiduciary duty by

26    competing against UACC while she was still employed by UACC. Defendant Stewart

27    did so to sabotage and hinder UACC's business operations.

28

101. Based on information and belief, as early as November 2024, Defendant Stewart began setting up her competing department at Defendant Veros Credit to compete with Plaintiff even while she was still employed by UACC including by, but not limited to, conducting meetings with Defendant Veros Credit, including Defendant's recruiter Elva Cook to coordinate on the geographic scope of her competing venture and on the timing to recruit key employees of Plaintiff.

102. Defendant Stewart continued working for UACC and drawing a salary from UACC even while she was acting on behalf of Defendant Veros Credit and setting up her competing department at Defendant Veros Credit. Based on information and belief, As a high-level manager, Defendant Stewart had discretionary authority to manage deal quotes and contracts for UACC. Defendant owed Plaintiff a duty of loyalty to act with the utmost good faith and in Plaintiff's best interests.

103. California Labor Code section 2863 states: "An employee who has any business to transact in his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

104. Prior to her departure, and while still a manager with access to key financial metrics and business plans of UACC, Defendant colluded to take UACC confidential information, dealers, key personnel, and engaged in unlawful and inappropriate efforts to benefit and profit from UACC intellectual property.

105. Based on information and belief, while employed at UACC, Defendant Stewart solicited UACC clients and employees she was supervising to leave the employ of UACC and to work for Defendant Veros Credit. Defendant Stewart also encouraged, orchestrated, organized, and participated in a coordinated scheme for herself and others to resign.

106. Based on information and belief, while Defendant Stewart solicited dealers and employees from UACC while still employed by UACC. Defendant Stewart competed with UACC and labored to sabotage and hinder UACC's

1  implementation of market penetration strategies in various markets while still
2  employed by UACC.

3      107.   Furthermore, by the time Defendant Stewart attended the December 3,
4  2024, business strategy meetings, she had already transferred her loyalty to Defendant
5  Veros Credit.

6      108.   Based on information and belief, Defendant Stewart specifically attended
7  the December meetings to dine with, and solicit, key managers and high performing
8  personnel. Defendant Stewart attended a dinner prior to her December 4, 2024,
9  resignation where she mingled with UACC's Chief Executive Officer and other
10 executives to enhance her personal image. Thereby, she would use her apparent
11 elevated status to influence key employees to move with her to Defendant Veros
12 Credit. That is, Defendant Stewart used the December meetings as a vehicle to further
13 compete with UACC during her employment and sabotage and interfere with UACC's
14 business plans.

15     109.   Independent of her conduct relating to misappropriation of UACC's
16 confidential information and trade secrets, Defendant Stewart engaged in materially
17 distinct actionable fraudulent conduct and deceit. Specifically, Defendant Stewart used
18 her position to attend a multi-day strategic meeting in the guise of benefitting UACC
19 and thereby caused UACC to incur expenses, including without limitation for travel,
20 accommodations, meals and wages owed to Defendant Stewart. Further, Defendant
21 Stewart was compensated by attending the strategic meeting on UACC company time
22 when in reality, by the time Defendant Stewart attended the meeting, her loyalty had
23 transferred to Defendant Veros Credit and she knew that she would resign.

24     110.  Defendant Stewart was motivated to impress her new employer,
25 Defendant Veros Credit, and benefit herself in her new position. By obstructing,
26 impeding, and interfering with UACC business operations while employed by UACC,
27 Defendant Stewart positioned herself and Defendant Veros Credit to exploit the
28 emerging opportunities. Accordingly, she labored to take customers, key personnel,

and engaged in conduct to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

111.    Upon information and belief, it is hereby alleged that contrary to her duty of loyalty owed to UACC, and without UACC's consent, Defendant misappropriated and misused UACC's confidential information and interfered with UACC's business plans.

112.    As a direct and proximate result of Defendants' breach of her duty of loyalty, UACC has been damaged, including but not limited to incurring travel expenses, accommodations, and paying for Defendant Stewart to be on UACC company time when she in fact was competing against UACC during her employment.

## FOURTH CAUSE OF ACTION

### BREACH OF DUTY OF LOYALTY

### (Against Defendants Stewart and Hicks)

113.    Plaintiff incorporates by reference paragraphs 1 through 58 to this cause of action.

114.    UACC is the owner of non-trade secret, but nonetheless protectable, confidential and proprietary information. This information is exclusively owned by UACC. UACC is the owner of this information with the exclusive right to possession of it. For the protectable information misappropriated by Defendant Stewart and Defendant Hicks, UACC bases its breach of duty of loyalty claim solely and entirely on the non-trade secret confidential and proprietary information taken by Defendant Stewart and Defendant Hicks. In other words, Defendant Stewart's and Defendant Hicks' wrongdoing under this claim is not based on the existence of a trade secret.

115.    Moreover, Defendant Stewart and Defendant Hicks breached their duty of loyalty by competing against UACC while they were still employed by UACC. Defendant Stewart and Defendant Hicks did so to sabotage and hinder UACC's business operations.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

116.    Based on information and belief, as early as November 2024, Defendant Stewart began setting up her competing department at Defendant Veros Credit to compete with Plaintiff even while she was still employed by UACC including by, but not limited to, conducting meetings with Defendant Veros Credit to coordinate on the timing to recruit key employees of Plaintiff. Based on information and belief, as part of her scheme, Defendant Stewart conducted a meeting with Defendant Veros Credit's recruiter, Elva Cook, among others whose identities will be revealed through discovery.

117.    Defendant Stewart and Defendant Veros Credit coordinated her departure date to maximize their success of covertly soliciting clients and key employees while still employed by UACC in order to establish a competing venture at Defendant Veros Credit.

118.    Based on information and belief, Defendant Stewart's coordinated effort enabled her to negotiate a higher salary and title, favorable compensation plan, and additional non-monetary benefits.

119.    As high-level managers, Defendants Stewart and Hicks owed Plaintiff a duty of loyalty to act with the utmost good faith and in Plaintiff's best interests.

120.    California Labor Code section 2863 states: "An employee who has any business to transact in his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

121.    Upon information and belief, it is hereby further alleged that Defendant Hicks agreed with Defendant Stewart's actions and intended for Defendant Stewart to commit the misappropriation of confidential information of UACC for the benefit of Defendant Veros Credit. Without authorization from UACC, Defendant Hicks emailed to his personal account the list of the key contact information for dealers that engaged in prior business transactions with UACC, and then he went to work for Defendant Veros Credit days after he had taken such information.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

122.   Prior to her departure, and while still a manager with access to key financial metrics and business plans of UACC, Defendants colluded to take UACC confidential information, dealers, key personnel, and engaged in unlawful and inappropriate efforts to benefit and profit from UACC intellectual property.

123.   Based on information and belief, Defendants Stewart and Hicks, in the final weeks of employment, solicited dealers and employees from UACC while they were still employed by UACC. Defendants Stewart and Hicks competed with UACC and labored to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

124.   Defendants Stewart and Hicks were motivated to take dealers and key personnel to impress their new employer, Defendant Veros Credit, and benefit themselves in their new positions. By obstructing, impeding, and interfering with UACC business operations while employed by UACC, Defendants Stewart and Hicks positioned themselves and Defendant Veros Credit to exploit the emerging opportunities. Accordingly, they labored to take dealers, key personnel, and engaged in conduct to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

125.   Specifically, while employed at UACC, Defendant Stewart solicited UACC employees she was supervising to leave the employ of UACC and to work for Defendant Veros Credit. Defendant Stewart also encouraged, orchestrated, organized, and participated in a coordinated scheme for herself and others to resign.

126.   Furthermore, by the time Defendant Stewart attended the December 3, 2024, business strategy meeting, she had already transferred her loyalty to Defendant Veros Credit. Therefore, Defendant Stewart's breach of duty of loyalty caused UACC to incur expenses as she surreptitiously took actions inimical to the best interests of UACC.

127.   Upon information and belief, it is hereby alleged that contrary to her duty of loyalty owed to UACC, and without UACC's consent, Defendant misappropriated

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

and misused UACC's confidential information and interfered with UACC's business plans.

128.   As a direct and proximate result of Defendant's breach of their duty of loyalty, UACC has been damaged, including but not limited to incurring travel expenses and accommodations for Defendant Stewart, and paying for Defendant Stewart and Defendant Hicks to be on UACC company time when they in fact were competing against UACC during their employment.

## FIFTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

### (Against All Defendants)

129.   Plaintiff incorporates by reference paragraphs 1 through 58 to this cause of action.

130.   UACC bases its unfair business practices claim solely and entirely on the non-trade secret confidential and proprietary information taken by Defendant Stewart and Defendant Hicks. In other words, Defendant Stewart's and Defendant Hicks' wrongdoing under this claim is not based on the existence of a trade secret.

131.   Moreover, Defendant Stewart and Defendant Hicks engaged in unfair business practices by competing against UACC while they were still employed by UACC. Defendant Stewart and Defendant Hicks did so to sabotage and hinder UACC's business operations.

132.   Based on information and belief, as early as November 2024, Defendant Stewart began setting up her competing department at Defendant Veros Credit to compete with Plaintiff even while she was still employed by UACC including by, but not limited to, conducting meetings with Defendant Veros Credit to coordinate on the timing to recruit key employees of Plaintiff. Based on information and belief, as part of her scheme, Defendant Stewart conducted a meeting with Defendant Veros Credit's recruiter, Elva Cook, among others whose identities will be revealed through discovery.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

133.   Based on information and belief, Defendant Stewart and Defendant Veros Credit coordinated her departure date to maximize their success of covertly soliciting clients and key employees while still employed by UACC in order to establish a competing venture at Defendant Veros Credit.

134.   Based on information and belief, Defendant Stewart's coordinated effort enabled her to negotiate a higher salary and title, favorable compensation plan, and additional non-monetary benefits.

135.   Upon information and belief, it is hereby alleged that Defendants were co-conspirators with each other, and knew or should have known that each other intended to interfere with UACC's employee and dealer relationships in order to unjustly enrich themselves.  Upon information and belief, it is hereby further alleged that Defendants agreed with each other's actions and intended for each other to interfere with UACC's employees and dealers and direct those parties to do business with themselves for their own benefit. Upon information and belief, it is hereby further alleged that UACC agreed with each other's actions and intended to fraudulently and unfairly interfere with UACC's dealers and employees and direct those parties to do business with or work for Defendant Veros Credit, in direct competition with UACC.

136.   California Business and Professions Code section 17200 et seq. ("UCL") prohibits, among other things, unlawful, fraudulent, deceptive, and unfair business practices.

137.   Prior to Defendant Stewart's departure, and while she was still a high-level manager, Defendants colluded to take UACC's clients and engaged in unlawful and inappropriate efforts to divert UACC dealers and key personnel to Defendant Veros Credit.

138.   Based on information and belief, Defendants Stewart and Hicks, in the final weeks of employment, solicited dealers and employees from UACC while they were still employed by UACC. Defendants Stewart and Hicks competed with UACC

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

and labored to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

139.    Defendants Stewart and Hicks were motivated to take dealers and key personnel to impress their new employer, Defendant Veros Credit, and benefit themselves in their new positions. By obstructing, impeding, and interfering with UACC business operations while employed by UACC, Defendants Stewart and Hicks positioned themselves and Defendant Veros Credit to exploit the emerging opportunities. Accordingly, they labored to take dealers, key personnel, and engaged in conduct to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

140.    Specifically, based on information and belief, while employed at UACC, Defendant Stewart solicited UACC employees she was supervising to leave the employ of UACC and to work for Defendant Veros Credit. Defendant Stewart also encouraged, orchestrated, organized, and participated in a coordinated scheme for herself and others to resign.

141.    Furthermore, by the time Defendant Stewart attended the December 3, 2024, business strategy meeting, she had already transferred her loyalty to Defendant Veros Credit. Therefore, Defendant Stewart's breach of duty of loyalty caused UACC to incur expenses for her travel and accommodations as she surreptitiously took actions inimical to the best interests of UACC. Further, UACC paid Defendant Stewart to be on UACC company time to attend the multi-day meetings.

142.    If UACC have known the true intentions of Defendant Stewart, UACC would not have incurred expenses for her travel and accommodations, pay for her attendance, or willingly allow Defendant Stewart into the business strategy meetings.

143.    By concealing her loyalty to Defendant Veros Credit, Defendant Stewart was allowed to attend the 2024 meetings on UACC's dime and execute her own agenda.

144.   Upon information and belief, it is hereby further alleged that Defendant Hicks agreed with Defendant Stewart's actions and intended for Defendant Stewart to commit the misappropriation of confidential information of UACC for the benefit of Defendant Veros Credit. Without authorization from UACC, Defendant Hicks emailed to his personal account the list of the key contact information for dealers that engaged in prior business transactions with UACC, and then he went to work for Defendant Veros Credit days after he had taken such information.

145.   Upon information and belief, it is hereby alleged that contrary to Defendants Stewart's and Hicks' duty of loyalty owed to UACC, without UACC's consent, and while misusing its protected information, Defendants misused UACC's key business information, interfered with UACC's business and key employee relationships, and they used UACC's confidential information to  key personnel to leave their employment and go work for Defendant Veros Credit.

146.   As a direct and proximate result of Defendants' unfair business practices, UACC has been damaged, including but not limited to incurring travel expenses and accommodations for Defendant Stewart, and paying for Defendant Stewart and Defendant Hicks to be on UACC company time when they in fact were competing against UACC during their employment.

## SIXTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

### (Against Defendant Stewart)

147.   Plaintiff incorporates by reference paragraphs 1 through 58 to this cause of action.

148.   Based on information and belief, as early as November 2024, Defendant Stewart took actions to set up her competing department at Defendant Veros Credit to compete with Plaintiff even while she was still employed by UACC including by, but not limited to, conducting meetings with Defendant Veros Credit to coordinate on the timing to recruit key employees of Plaintiff. Based on information and belief, as part

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

of her scheme, Defendant Stewart conducted a meeting with Defendant Veros Credit's recruiter, Elva Cook, among others whose identities will be revealed through discovery.

149.    Based on information and belief, Defendant Stewart and Defendant Veros Credit coordinated her departure date to maximize their success of covertly soliciting clients and key employees while still employed by UACC in order to establish a competing venture at Defendant Veros Credit.

150.    While she was employed by UACC, through December 2024, Defendant Stewart represented that she was attending the UACC December 3, 2024, business strategy meeting as a loyal manager of UACC and that she was interested in the business development and advancement of UACC. Through her actions and statements, Defendant Stewart misrepresented that the confidential materials being presented at the strategy meeting would be used only for UACC business purposes. Also, Defendant Stewart had represented to UACC that she would return all its property promptly when she left the employ of UACC, including all electronic information. Such statements are material statements and a misrepresentation.

151.    In other words, Defendant Stewart engaged in a fraudulent and deceitful course of conduct with the intent to knowingly deceive UACC. By the time Defendant Stewart attended the December 3, 2024, Defendant Stewart failed to disclose to UACC her prior agreement or commitment to work for Defendant Veros Credit. She did so to cause UACC to incur expenses for her travel and accommodations as she surreptitiously took actions inimical to the best interests of UACC. Further, UACC paid Defendant Stewart to be on UACC company time to attend the multi-day meetings.

152.    Should UACC have known the true intentions of Defendant Stewart, UACC would not have incurred expenses for her travel and accommodations, pay for her attendance, or willingly allow Defendant Stewart into the business strategy meetings.

153. By concealing her loyalty to Defendant Veros Credit, Defendant Stewart was allowed to attend the 2024 meetings on UACC's dime and execute her own agenda.

154. Defendant Stewart specifically attended the December meetings to dine with, and solicit, key managers and high performing personnel. Defendant Stewart attended a dinner prior to her December 4, 2024, resignation where she mingled with UACC's Chief Executive Officer and other executives to enhance her personal image. Thereby, she would use her apparent elevated status to influence key employees to move with her to Defendant Veros Credit. That is, Defendant Stewart used the December meetings as a vehicle to further compete with UACC during her employment and sabotage and interfere with UACC's business plans.

155. Defendant Stewart was motivated to impress her new employer, Defendant Veros Credit, and benefit herself in her new position. By obstructing, impeding, and interfering with UACC business operations while employed by UACC, Defendant Stewart positioned herself and Defendant Veros Credit to exploit the emerging opportunities. Accordingly, she labored to take dealers, key personnel, and engaged in conduct to sabotage and hinder UACC's implementation of market penetration strategies in various markets while still employed by UACC.

156. Surreptitiously, commencing on or about November 26, 2024, and continuing through December 3, 2024, while she attended UACC's in-person business strategy meeting, Defendant Stewart accessed and downloaded UACC confidential information and documents onto her personal email account. Notably, despite UACC's reasonable requests, Defendant Stewart has delayed to return the UACC confidential information and documents from her personal accounts. Instead, Defendant Stewart continues to have access to UACC's confidential business information and documents.

157. Defendant Stewart's representations that she would not take UACC confidential information and documents, and that she would participate in and attend

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

the December 3, 2024, strategy meeting in Fort Worth for the benefit of UACC, are material misrepresentations that Defendant Stewart made knowing that such representations were not true.

158.   Upon information and belief, Defendant Stewart intentionally concealed the fact that she was attending the December 3, 2024 strategy meeting to take UACC confidential information and documents and use information for her own personal benefit, with the intent to mislead UACC managers and induce UACC managers to act in reliance on her representations, so she could access the most up-to-date UACC confidential information available before she left on December 4, 2024, to work for a competitor, Defendant Veros Credit. Defendant Stewart's statements were made with the intent to induce UACC managers to act in reliance on them, with UACC managers justifiably relying on such statements.

159.   Simply put, Defendant Stewart concealed and suppressed the material fact that her true loyalty was to UACC's competitor, Defendant Veros Credit. Defendant Stewart intentionally concealed and suppressed this fact with the intent to defraud UACC. Because UACC was unaware of the concealed fact and justifiably relied on Defendant Stewart's omission, UACC has suffered damages, including but not limited to incurring travel expenses, accommodations, and paying for Defendant Stewart to be on UACC company time when she in fact was competing against UACC during her employment.

UACC relied on Defendant Stewart's misrepresentations to its detriment.

160.   As a direct and proximate result of Defendant Stewart's misrepresentations and, based on information and belief, Defendant Stewart's use of UACC confidential information and documents and her continuous delay to allow a forensic inspection and for a forensic purging of UACC materials, Plaintiff has been harmed in an amount according to proof at trial.

161.   Defendant Stewart's wrongful conduct is a substantial factor causing UACC's damages and/or injuries.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For preliminary and permanent orders enjoining Defendants from possessing, using or disclosing any of Plaintiff's trade secrets and/or any confidential or proprietary information;

2. For preliminary and permanent orders requiring Defendants to account for and return to Plaintiff any and all of Plaintiff's property, including its trade secrets and any confidential, and/or proprietary information belonging to Plaintiff;

3. For an order requiring the inspection of Defendants' and DOE Defendants' email, servers, hard drives, computer(s), mobile devises, PDAs, USB drives and other computer equipment, including any hosted storage space, by a forensic expert to ensure that Plaintiff's trade secrets and confidential information and/or proprietary data do not exist on such devices;

4. For an award of compensatory, general and special damages in an amount according to proof;

5. For statutory damages as appropriate; or restitution as appropriate, including disgorgement of profits unlawfully obtained by Defendants, and based on Defendants' unjust enrichment;

6. Alternatively, Plaintiff seeks an award of reasonable royalties under Civil Code section 3426.3, subdivision (b), if neither actual loss nor unjust enrichment are provable;

7. For an award of punitive damages in an amount against Defendants sufficient to punish and make an example of Defendants;

8. For reasonable attorney's fees;

9. For prejudgment and post-judgment interest;

10. For costs of suit incurred herein; and

11. For such other and further relief as the Court may deem proper.

/ / /

/ / /

37    Case No. 8:25-cv-65-RGK-ADS

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

DATED: July 7, 2025                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


                                       By: */s/ David A. Garcia*
                                       _____
                                       David A. Garcia
                                       Attorneys for Plaintiff
                                       United Auto Credit Corporation