## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

Present: The Honorable   R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Joseph Remigio | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order Re: Defendant Veros Credit LLC's Motion for Summary Judgment [90]; Defendant Jessica Stewart's Motion for Summary Judgment [91]; Defendant Julian Hicks' Motion for Summary Judgment [92]; Plaintiff's Motion for Partial Summary Judgment [104]**

## I.   INTRODUCTION

On July 7, 2025, United Auto Credit Corporation ("UACC" or "Plaintiff") filed the First Amended Complaint ("FAC") against its former employees Jessica Stewart and Julian Hicks, as well as its competitor in the automotive lending space, Veros Credit, LLC ("Veros") (collectively, "Defendants"). (ECF No. 38.) Plaintiff alleges that Stewart and Hicks conspired with Veros to steal its trade secrets. Accordingly, Plaintiff asserts the following causes of action: (1) violation of the Defend Trade Secrets Act ("DTSA") against Defendants; (2) violation of the California Uniform Trade Secrets Act ("CUTSA") against Defendants; (3) breach of fiduciary duty against Stewart; (4) breach of duty of loyalty against Stewart and Hicks; (5) violation of California's Unfair Competition Law ("UCL") against Defendants; and (6) fraudulent concealment against Stewart.

Presently before the Court are four motions for summary judgment: (1) Veros' Motion for Summary Judgment (Veros MSJ, ECF No. 90); (2) Stewart's Motion for Summary Judgment (Stewart MSJ, ECF No. 91); (3) Hicks' Motion for Summary Judgment (Hicks MSJ, ECF No. 92); and (4) Plaintiff's Motion for Partial Summary Judgment (Pl. MSJ, ECF No. 104). For the following reasons, the Court **GRANTS** Defendants' Motions for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

## II.    FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted:[1]

Plaintiff is a non-prime automotive lender, providing lending services to car dealerships ("dealerships" or "dealers") and customers. (Pl.'s Resp. Statement Facts ("PRSF") ¶¶ 1, 3–4, ECF No. 135-1.) To aid its business, Plaintiff has developed and maintains "risk assessment" models. (*Id.* ¶¶ 3–4.) All of Plaintiff's data is kept behind firewalls and password protected systems. (*Id.* ¶ 35.)

Included in this data is Plaintiff's internal "dealer grades." (*Id.* ¶ 35.)  Plaintiff assigns dealers letter grades, which are composed of dozens of data points compiled by numerous salespeople and risk team members over multiple years that allow Plaintiff to internally determine risk and pricing for loans for each dealer. (S. Grueser Dep. 159:23–160:16, Pl. MSJ, Ex. C, ECF No. 106-2.) The dealer grades educate Plaintiff's fee allocation and loan value strategy, impacting the loan costs and fee structure for each car loan per dealer. (Pl. Rule 30(b)(6) Dep. 70:7–9, Pl. MSJ, Ex. F, ECF No. 106-1; PRSF ¶ 39.) Plaintiff reevaluates its dealer grades monthly, and the grade for a dealer one month is not necessarily predictive of what the dealer's grade will be the following month. (Pl. Rule 30(b)(6) Dep. 197:17–198:18, Veros MSJ, Ex. 14, ECF No. 94-3.) However, some dealers have had the same grade for years, and Plaintiff's personnel testified that "[h]aving access to dealer grade information, regardless of the time period, is valuable information." (Grueser Dep. 163:16–22, 165:11–13, Pl. Opp., Ex. H, ECF No. 122-2.)

If a competitor obtained Plaintiff's dealer grade information, the competitor could outbid Plaintiff with a higher loan amount or lower fees and could gain insight into a dealer with which the competitor does not yet have a relationship with. (Pl. Rule 30(b)(6) Dep. 70:10–23.) Gaining such insight could help the competitor determine whether to pursue business with that dealer. (*Id.*)

Plaintiff's personnel also invested time[2] and efforts into creating certain metrics and corresponding reports, including "call-time reporting," "look-to-book metric," return on assets for specific dealers (also referred to as "ROA"), and risk reports. (PRSF ¶ 40; A. McEldowney Dep. 85:6–20, Pl. MSJ, Ex. D, ECF No. 104-6.)

Veros also operates in the nonprime automotive lending industry and is a direct competitor of Plaintiff. (PRSF ¶ 19.) AutoCount is a service that collects data from the California Department of Motor Vehicles that companies in the auto loan financing industry subscribe to, including Veros.

---

[1] The parties make numerous objections to the evidence presented in support of and opposition to the Motions. To the extent the Court relies upon evidence to which the parties have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which the parties have objected, the objections are **DENIED** as moot.
[2] The parties dispute as to whether Plaintiff invested "hundreds of hours of compensation" to analyze, develop, and compile these metrics and reports. (PRSF ¶ 40.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

(Veros' Resp. Statement Facts ("VRSF") ¶¶ 32, 33, ECF No. 119-1.) AutoCount allows its subscribers to search for all dealers within California that have done deals with Plaintiff. (*Id.* ¶ 34.) Experian's Velocity is another service that allows subscribers to look up the number of deals a California dealer has done with companies like Plaintiff and Veros. (*Id.* ¶ 35.) Accordingly, AutoCount and Velocity make publicly available the names of dealers with which Plaintiff has done dealings. (*Id.* ¶ 36.)

Stewart and Hicks are Plaintiff's former employees and now work at Veros. (PRSF ¶¶ 7, 11, 75; VRSF ¶ 44.) Plaintiff has confidentiality agreements prohibiting its employees from taking or sharing its confidential information, including by transferring any of its data onto employees' personal devices. (*See, e.g.,* Hybrid and Remote Work Agreement, Pl. MSJ, Ex. K, ECF No. 104-13.) Plaintiff has copies of such confidentiality agreements bearing Stewart and Hicks' respective electronic signatures. (*See, e.g., id.*; Employee Confidentiality and Disclosure Agreement, Pl. MSJ, Ex. Q, ECF No. 104-17.)

Conversely, Veros' employment agreement prohibits its employees from using any trade secret information belonging to a third party in their work at Veros absent consent. (PRSF ¶ 139.)

### A.  <u>Jessica Stewart</u>

Plaintiff hired Stewart in March 2022. (PRSF ¶ 7.) Stewart was Plaintiff's Division Manager of Sales and Marketing in the southwestern region of the United States, responsible for development, deployment, and oversight of several Area Sales Managers and ensuring month-over-month sales volume growth. (*Id.* ¶¶ 9, 10.) In this role, Stewart had access to Plaintiff's confidential strategy and compensation materials. (*Id.* ¶ 13.) Stewart's duties did not include managing Plaintiff as an organization. (*Id.* ¶ 70.)

In November 2024, Veros began to recruit Stewart to join its company. (*Id.* ¶ 20.) On November 26, 2024, Veros orally offered Stewart employment as Regional Vice President of Sales and Marketing, designated to cover the western region of the United States. (*Id.* ¶ 23.) The employment offer was made contingent on her resignation from Plaintiff and passing a background check (*Id.* ¶¶ 22–23.) On November 27, 2024, Stewart orally accepted Veros' employment offer. (*Id.* ¶¶ 24, 71.) Later, on December 2, 2024, Veros sent Stewart a written offer for prospective employment, contingent on the same conditions as the oral offer. (*Id.* ¶¶ 28, 73–74.)

On November 26 and 27, 2024, Stewart forwarded from her UACC email to her personal email several of Plaintiff's documents, with some of the contents therein containing or relating to specific dealers, dealer grades, loan pricing, sales trends and strategies, training materials, and marketing methodology. (*Id.* ¶¶ 25, 35.)

From December 2 – 4, 2024, Stewart traveled to and attended Plaintiff's division meetings in Texas, in which Plaintiff's business plans were discussed. (*Id.* ¶ 29.) More specifically, Stewart attended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | | Date | February 19, 2026 |
|---|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | | |

meetings discussing planned changes to the Area Sales Managers' pay plan. (J. Stewart Dep. 166:4–13, Pl. MSJ, Ex. H, ECF No. 104-10.) While attending these meetings in Texas, Stewart filled out some of Veros' hiring forms. (PRSF ¶ 30.)

On or around December 3, 2024, Stewart sent from her UACC email to her personal email two UACC documents: (1) containing information on Plaintiff's salary and compensation metrics and planned changes thereto; and (2) containing information Plaintiff collected about specific dealers, their grades, their ROA metrics, and sales notes. (*Id.* ¶¶ 33, 64; Pl. Opp'n, Ex. AA, ECF No. 101-8.) As for the second document, Stewart had previously forwarded an earlier version of it to her personal email on November 27, 2024. (J. Stewart Dep. 301:10–309:4, Defs. Opp'n, Ex. 3, ECF No. 109-6.)

On the night of December 3, 2024, Stewart verbally told her supervisor that she would be resigning from Plaintiff. (Stewart Dep. 210:25-211:19.) The following morning, Stewart formally resigned. (VRSF ¶ 14; Stewart's Resp. Statement Facts ("SRSF") ¶ 22, ECF No. 121-1.)

Later that afternoon on December 4, 2024, Stewart went to Veros' office and signed its employment contract. (PRSF ¶ 75; VRSF ¶ 15.) On December 9, 2024, Stewart began training and working at Veros. (PRSF ¶ 77.) Stewart performed no substantive work for Veros before completing this training. (VRSF ¶ 16.)

Shortly after Stewart started working at Veros, Stewart contacted Alex McEldowney, who was Plaintiff's employee at the time, to discuss working at Veros. (PRSF ¶ 52; McEldowney Dep. 103:4–104:10.) Independently, McEldowney saw in a LinkedIn post that Veros was looking to hire a data scientist. (McEldowney Dep. 101:10–13.) After interviewing him, Veros hired McEldowney as a data scientist. (PRSF ¶ 55.)

**B.    Julian Hicks**

On June 20, 2022, Plaintiff hired Hicks as an Area Sales Manager. (PRSF ¶ 11.) In that role, Hicks was responsible for marketing Plaintiff to dealers with the aim of bringing credit applications to Plaintiff. (VRSF ¶ 38.) As part of this job, Hicks collected contact information for dealers and their personnel as points of contact for lending opportunities. (*Id.*) To do so, Hicks would first search publicly available sources, like Google, for dealers' contact information. (*Id.*) Hicks would also collect contact information by walking into a dealership, engaging in conversation, and asking for their number. (*Id.*)

As part of this latter sales strategy, Hicks would develop rapport with dealers. (PRSF ¶ 12.) When developing rapport with a dealership, Hicks would try to develop a relationship with "anybody" working there but would specifically request to speak with dealer personnel who were responsible for credit applications. (J. Hicks Dep. 51:3–53:16, Pl. MSJ, Ex. P, ECF No. 104.) After building a rapport,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | | Date | February 19, 2026 |
|---|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | | |

Hicks would ask the dealer personnel, including those responsible for credit applications, for their contact information to be able to follow up. (*Id.* 54:6–55:2.)

Hicks first learned about Veros from an email from a third-party company about Veros' job listing. (PRSF ¶¶ 87, 89.) Afterwards, Stewart spoke with Hicks about how she left Plaintiff and that there was an open position at Veros. (*Id.* ¶ 47.) Subsequently, Stewart helped Veros recruit Hicks, which included participating in his interview. (*Id.* ¶ 48.)

On December 12, 2024, Hicks forwarded from his UACC email to his personal email (1) shortcuts to access aspects of a cellular service plan, and (2) a contact list that included approximately 300 names and phone numbers. (J. Hicks Dep. 153:21-154:7; Hicks' Resp. Statement Facts ("HRSF") ¶ 15, ECF No. 120-1; PRSF ¶ 45; Veros MSJ, Ex. 56, ECF No. 117-33.) Some of the contacts included roadside assistance, his coworkers at UACC, his personal friends, at least one insurance broker, and auto dealerships and their personnel, some of which Plaintiff had conducted business with and some of which Plaintiff had not. (Hicks Dep. 153:21-154:7; HRSF ¶¶ 17–18, 20.) As for the dealers in the contact list, all were in California, and some had already gone out of business by the time Hicks left Plaintiff. (HRSF ¶¶ 19, 21.) For some of the dealers, the contact list included the dealers' public main numbers that could be found on Google. (VRSF ¶ 37.) The contact list also included dealers with which Veros had already done business with before Hicks joined. (*Id.* ¶ 39.)

On December 13, 2024, Hicks resigned from Plaintiff. (VRSF ¶ 43.) On December 16, 2024, Hicks became an employee of Veros. (*Id.* ¶ 44.)

At Veros, Hicks reports to Stewart. (PRSF ¶ 49.) Stewart instructed Hicks to book deals with dealers, provided his tactics were not illegal. (Stewart Dep. 339:14–20.) Since joining Veros, Hicks has contacted phone numbers from the contact list he forwarded from his UACC email to his personal email. (Hicks Dep. 130:10–131:4.) More specifically, Hicks has contacted dealers listed in the contact list, at times contacting by phone or in person. (*See id.* 130:10–131:4, 204:20–23, 213:2–5.) On Veros' behalf, Hicks has made lending deals with some of those dealers. (VRSF ¶ 5.)

### C.   Litigation

On December 17, 2024, Plaintiff sent Stewart a "Cease-and-Desist Letter," requesting she return all copies of Plaintiff's documents and materials in her possession and not to delete any electronic information in her control relevant to Plaintiff (a "preservation notice") and informing her that depending on her cooperation, Plaintiff may conduct a forensic examination of her personal email account that she had forwarded Plaintiff's documents to. (Pl. MSJ, Ex. HH, ECF No. 104-30.) On December 18, 2024, Plaintiff sent a similar Cease-and-Desist Letter to Hicks. (PRSF ¶ 59.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

On December 17, 2024, Plaintiff also sent a Cease-and-Desist Letter to Veros, informing Veros that Stewart and Hicks may be coordinating the misuse of Plaintiff's proprietary information. (*Id.* ¶ 60.) Plaintiff informed Veros that its former employees were prohibited from disclosing or misusing its information, and notified Veros that it must preserve its information relating to this matter. (Pl. MSJ, Ex. MM, ECF No. 104-34.) Veros did not advise Stewart of its receipt of the Cease-and-Desist Letter before this lawsuit was filed on January 14, 2025. (Stewart Dep. 284:19–185:9.)

On December 18, 2024, Stewart responded via email that she acknowledged receipt of the Cease-and-Desist Letter, confirmed she had not forwarded or shared emails or copies of Plaintiff's materials with anyone else, and asked if she should send the materials directly to Plaintiff's counsel. (Pl. Opp'n, Ex. BBB, ECF No. 99-52.) In response, Plaintiff's counsel asked Stewart to identify all documents from Plaintiff in her possession, sign and return the preservation notice, and identify various information, including all of her personal devices, her email accounts, and persons from Veros she had communicated with since her departure from Plaintiff. (*Id.*) On January 14, 2025, Stewart agreed to take the measures requested in the Cease-and-Desist Letter, including destroying the materials at issue, but declined to acquiesce to the additional requests posed in Plaintiff's counsel's email. (*Id.*) Plaintiff objected to this proposal. (PRSF ¶ 44.)

On January 14, 2025, Plaintiff initiated this action against Defendants. (ECF No. 1.) Plaintiff asserts Defendants have misappropriated 30 trade secrets, enumerated as items 1–30 ("Alleged Trade Secrets 1–30"). (PRSF ¶ 133.) The enumerated Alleged Trade Secrets include the following:

1. UACC_000406: contains dealer-specific data, including data on leads, prospects, and dealer grades;

2. UACC_000408 – UACC_000409: contains data concerning Plaintiff's competitors and dealers, including Plaintiff's capacity to approve dealers under certain conditions and dealer grades;

3. UACC_000413: contains dealer-specific data, including dealer grades;

4. UACC_000442 – UACC_000444: contains information concerning UACC's personnel's capture deal rate, pending contracts, application count, and total booked deals;

5. UACC_000446 – UACC_000450: contains information about Plaintiff's process for planning and approaching dealers;

6. UACC_000452 – UACC_000468: contains information regarding the use of Plaintiff's dealer grades;

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

7. UACC_000476 – UACC_000478: contains information regarding Plaintiff's business objectives and markets;

8. UACC_000481 – UACC_000482: includes Plaintiff's internal assessment of service to propose to dealers;

9. UACC_000485 – UACC_000496: includes information regarding UACC's market penetration and evaluation of sales methodology;

10. UACC_000583 – UACC_000591: includes information regarding the results of problems associated with increasing business with respect to certain dealers and regions;

11. UACC_000592 – UACC_000603: includes information regarding specific dealers;

12. UACC_000605: includes internal training materials to sign up new dealers;

13. UACC_000610 – UACC_000611: includes internal training materials to sign up new dealers;

14. UACC_000613 – UACC_000617: includes sales data and trends;

15. UACC_000620 – UACC_000622: contains the results of sales calls;

16. UACC_000674: contains dealer-specific data, including the ROA, internal risk metrics, and dealer grades;

17. UACC_000688: includes internal training materials to sign up new dealers;

18. UACC_000689: includes grades internally assigned to types of vehicles, a factor used to assess loan risk;

19. UACC_000690: includes Plaintiff's metrics for customer score, fees to the dealer, and resulting payment to the dealer;

20. UACC_000726 – UACC_000739: contains dealer-specific data, including dealer grades;

21. UACC_000740 – UACC_000778: includes internal training materials and methods to use dealer data in sales;

22. UACC_000781 – UACC_000783: includes Plaintiff's methods to assess loan risk;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

23. UACC_000784 – UACC_000785: includes information regarding Plaintiff's auto loan products and pricing options;

24. UACC_000786 – UACC_000799: includes a summary of Plaintiff's benchmarks and guidance on maximizing the return on loans and when to deactivate a dealer;

25. UACC_000804 – UACC_000815: includes a summary of Plaintiff's benchmarks on avoiding loan buyback;

26. UACC_000818: includes Plaintiff's internal explanation of its methods to assess loan risk;

27. UACC_000821 – UACC_000822: includes Plaintiff's lending methodology for dealers with non-perfected vehicle titles;

28. UACC_000850: includes data regarding deals involving customers in bankruptcy;

29. UACC_000852: includes Plaintiff's market penetration strategy; and

30. UACC_000005 – UACC_000399: includes cellular service plan short cuts and contact information.

(VRSF ¶ 3; Pl.'s Second Suppl. Resp. Defs.' First Set Interrog. ("Pl.'s Supp. Resp. First Set Rog.") No. 1, Stewart MSJ, Ex. 5, ECF No. 91-9.) In sum, Alleged Trade Secrets 1–3, 16, and 20 contain information regarding Plaintiff's internal dealer grades, whereas Alleged Trade Secrets 4–8, 9–15, 17–19, and 21–30 do not. (VRSF ¶¶ 47–48.) The dealer grades referenced in Alleged Trade Secrets 1–3, 16, and 20 were over three months old by November 2024, at which point Stewart forwarded them to her personal email. (*Id.* ¶ 52.) Additionally, Alleged Trade Secrets 1–3, 10, 11, 16, 20, and 30 contain information regarding specific dealers Plaintiff did business with. (*See* Pl.'s Supp. Resp. First Set Rog. No. 1.)

Before she resigned from Plaintiff on December 4, 2024, Stewart forwarded the documents referenced in Alleged Trade Secrets 1–29 to her personal email from her UACC email. (VRSF ¶ 19.) Before he resigned from Plaintiff on December 13, 2024, Hicks forwarded the cellular service plan shortcuts and contact list referenced in Alleged Trade Secret 30 to his personal email from his UACC email. (*Id.* ¶¶ 12, 23, 24.)

Stewart asserted in her declaration that she has neither used since December 3, 2024 nor has memory of the information within Alleged Trade Secrets 1-29. (Stewart Decl. ¶¶ 7, 11, Veros MSJ, ECF No. 90-3.) Stuart declares she emailed the underlying documents to her personal email on her own

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

accord and without any direction from Veros. (*Id.* ¶ 14.) Nevertheless, the parties dispute whether Stewart brought any of Plaintiff's information and documents to Veros. (*See, e.g.*, PRSF ¶ 37.)

Plaintiff retained Angela Izuel as an expert to evaluate Plaintiff's damages related to the allegations in the FAC. (*See generally* A. Izuel Expert Report, Pl. MSJ, Ex. RR, ECF No. 106-17.) Based off conversations Izuel had with Plaintiff's Chief Risk Officer and Vice President of Risk Management, Izuel concluded that "the length of time for which data may be relevant is approximately three months due to updates to applications and deals . . . ." (*Id.* ¶ 35.)

In her expert report, Izuel opined that Plaintiff incurred the following damages: (1) using the "head-start" method, Veros achieved potential cost savings of $846,923 ("Head-Start Damages"); and (2) Plaintiff paid Stewart $10,430 in gross wages from November 26, 2024 through December 4, 2024, and reimbursed her for travel expenses to the December 2024 meeting amounting to $919.94. (*Id.* ¶ 22.) The Head-Start Damages relate solely to the allegedly misappropriated trade secrets. (*Id.* ¶¶ 22–38.)

Independently from Izuel's report, Plaintiff contends that there are "at least 23 dealers" with which volume of its business has declined and Veros has begun funding new deals with since Stewart and Hicks' departures from Plaintiff. (Pl.'s Second Suppl. Resp. to Defs.' Second Set of Interrog. No. 7, Pl. MSJ, Ex. AA, ECF No. 104-25.) Additionally, Plaintiff contends there are "at least 40 dealers" with which UACC had an existing business relationship with and Veros began newly funding deals with since Stewart and Hicks' departure from Plaintiff. (*Id.*) The parties dispute as to whether Plaintiff has lost any money or property because of any misappropriation or unfair, unlawful, or fraudulent business practices by Defendants (*See, e.g.*, VRSF ¶¶ 59–60.)

## III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

On issues where the moving party does not have the burden of proof at trial, the moving party is required to show that no evidence supports the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat a summary judgment motion, the nonmoving party may not merely rely on his pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmoving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the nonmoving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

evidence at the summary judgment stage, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

**IV.    DISCUSSION**

Defendants move for summary judgment on all claims asserted against them, whereas Plaintiff moves for partial summary judgment as to its follow claims: breach of fiduciary duty against Stewart, breach of duty of loyalty against Stewart and Hicks, unfair business practices against all Defendants, and fraudulent concealment against Stewart.

**A.    Trade Secret Claims**

Plaintiff brings claims for trade secret misappropriation under both the DTSA and CUTSA. "Courts have analyzed these claims together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

To prevail on a claim for trade secret misappropriation under the DTSA, a plaintiff must prove: (1) ownership of a trade secret; and (2) defendant's misappropriation of that trade secret. 18 U.S.C. § 1836(b)(1). Similarly, to prevail on a claim under the CUTSA, a plaintiff must show: (1) ownership of a trade secret; (2) the defendant's acquisition, disclosure, or use of the trade secret through improper means; and (3) that the defendant's actions damaged the plaintiff. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003). The definition of a "trade secret" consists of three elements: (1) information, (2) that derives independent economic value from not being generally known to the public, and (3) that the owner has attempted to keep secret. *See* 18 U.S.C. §§ 1839(3), (5); *see also Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154, 1158 (E.D. Cal. 2013) (noting a similar definition for trade secrets under the CUTSA).

Defendants argue that Plaintiff cannot show that the Alleged Trade Secrets derive independent economic value from being secret and are thus not protectable trade secrets. Plaintiff disagrees, arguing that (1) the dealer grade information, and (2) the compilation of customer information, risk assessment data, and training sales material have value derived from being secret. (*See, e.g.*, Pl. Opp'n Veros MSJ at 14, 16–17, ECF No. 98.)

In support of their Motions, Defendants point out that Rule 37(c) limits Plaintiff's theory of independent economic value. Defendants served Plaintiff interrogatories in which Defendants asked Plaintiff to identify "[f]or each individual trade secret . . . how the information derives independent economic value from being secret." (Pl.'s Supp. Resp. First Set Rog. No. 1 at 3–4.) Judge Spaeth ordered Plaintiff to respond to "all" of this interrogatory by November 3, 2025. (Hrg. Tr. at 13:2-7, Stewart MSJ, Ex. 11, ECF No. 91-15.) Accordingly, Plaintiff provided a supplemental response,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 8:25-cv-00065-RGK | | Date | February 19, 2026 |
|---|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | | |

however, Plaintiff only identified the economic value of Plaintiff's dealer grades and the identity of its dealers. (*See* Pl.'s Supp. Rog Resp. at 3–18 ("Because UACC's specific dealer data and dealer grades impact the loan costs and the fee structure of car loans, per dealer, knowledge of UACC's internal dealer analysis and dealer grades allows a competitor to undercut UACC in the market to gain a competitive advantage by using UACC's assessment of the risk associated with loans extended to customers at specific dealers. The information misappropriated by Defendants allows a competitor such as Defendant Veros Credit to know which dealers to target to develop business and which dealers to avoid and save time and expense. Discovery continues.")) Defendants argue that because Plaintiff failed to identify the independent economic value for trade secrets not involving dealer grades, Plaintiff cannot show such value exists for the other trade secrets.

Indeed, per Rule 26(e), Plaintiff was obligated to supplement its response to the interrogatory as ordered by the Court. Fed. R. Civ. P. 26(e). Pursuant to Rule 37(c), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c). Plaintiff neither contests, nor even addresses, that Rule 37(c) limits its theory of economic value to what was disclosed in its interrogatory responses. Plaintiff also does not attempt to assert that the failure to supplement its interrogatory response to identify other theories of economic value was justified or harmless. Accordingly, the Court finds Rule 37(c) applies to these Motions and limits Plaintiff's theory of independent economic value to the presence of dealer grades and specific dealers.[3] Given that Plaintiff did not previously disclose the economic value of the Alleged Trade Secrets that do not include dealer grades or identify specific dealers with which Plaintiff has done business with (Alleged Trade Secrets 4–9, 12–15, 17–19, and 21–29), Plaintiff has failed to demonstrate their independent economic value. *See Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 325 (C.D. Cal. 2004) (excluding evidence not disclosed to defendants in a plaintiff's deficient interrogatory answers and granting defendant's motion for summary judgment). Accordingly, Plaintiff has failed present evidence sufficient to create a genuine issue of material fact as to whether Alleged Trade Secrets 4–9, 12–15, 17–19, and 21–29 are protectable trade secrets.

As for the Alleged Trade Secrets with dealer grades (Alleged Trade Secrets 1–3, 16, and 20), Defendants argue that Plaintiff cannot show their independent economic value because of the fleeting relevance of dealer grade information. Indeed, it is uncontested that Plaintiff's dealer grades are reevaluated monthly, and Plaintiff's own expert stated in her report that the relevant length of time for which the Alleged Trade Secrets are relevant is approximately three months. There is also no dispute that the documents underlying the Alleged Trade Secrets were more than three months old in November

---

[3] Defendants argue that Plaintiff's Supplemental Interrogatory Response to Interrogatory No. 1 is limited to only dealer grades. However, Plaintiff also identified the economic value of the identity of dealers Plaintiff has conducted business with. (*See* Pl.'s Supp. Resp. First Set Rog. at 10.) Accordingly, the Court finds Plaintiff's theory of economic value for its Alleged Trade Secrets is limited to the value of the presence of dealer grades *and* specific dealers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

2024 when Stewart first forwarded them to her personal email. While evidence was introduced that some dealer grades can stay the same for years, Plaintiff did not point the Court to evidence that the dealer grades specified within the Alleged Trade Secrets did. Additionally, although Plaintiff's personnel testified that the dealer grade information is valuable regardless of the time period, this testimony does not establish what the value is or what facts it is based on. Since the evidence Plaintiff relies on is conclusory and speculative, Plaintiff fails to raise a genuine dispute of material fact as to the independent economic value of the Alleged Trade Secrets containing three month old dealer grade information. *See Finjan, Inc. v. Sophos, Inc.*, 2016 WL 2988834, at *6 (N.D. Cal. May 24, 2016) ("[C]onclusory and speculative testimony does not raise a genuine dispute of material fact and is insufficient to defeat summary judgment.") (citing *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738–39 (9th Cir. 1979)).

As for the Alleged Trade Secrets listing customers, customer lists are considered trade secrets "where the employer has expended time and effort identifying customers with particular needs or characteristics." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521–22 (1997) ("As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret."). On the other hand, "courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories." *Id.* at 1521. "Under this approach, perhaps the most important consideration is whether the information is readily accessible to a reasonably diligent competitor." *Perrin Bernard Supowitz, LLC v. Morales*, 2023 WL 1415572, at *7 (C.D. Cal. Jan. 31, 2023), *aff'd*, 2024 WL 411714 (9th Cir. Feb. 5, 2024) (internal quotations omitted). Mere identities of customers are not trade secrets. *Id.* at *8.

Defendants argue that Plaintiff cannot establish that the customer lists in the Alleged Trade Secrets have economic value because the identities of the dealers and their contact information are readily ascertainable through public sources. The Court agrees. It is undisputed that the public can subscribe to third party websites that allow subscribers to search for all dealers within California that have done deals with Plaintiff. Plaintiff itself has publicly disclosed 84 of the dealers included in the contact list in Alleged Trade Secret 30. (*See* Pl. Opp'n at 7–11, ECF No. 96.) Moreover, Hicks testified that he acquired some dealers' contact information from publicly available sources, like Google.

In its Opposition briefs, Plaintiff argues that the contact list in Alleged Trade Secret 30 includes the contact information for dealers' key decisionmakers, which was shared only after Plaintiff's sales personnel built rapport with them. However, "[f]or any given customer . . . , any [salesperson] could simply call or email the [dealer] and ask for the name and contact information of the person responsible for [lending services]." *Perrin Bernard Supowitz, LLC*, 2023 WL 1415572 at *8. Plaintiff submits nothing of substance suggesting that compiling the list of decisionmakers required significant time or expense or that it derived any independent or special economic value from its relationship with a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

particular decisionmaker on the contact list. Absent these indicators, the Court finds no basis to support finding that the contact list in the Alleged Trade Secrets has independent economic value that derives from the information being known only to Plaintiff. *See Perrin Bernard Supowitz, LLC*, 2023 WL 1415572 at *8–9 ("In the absence of any indicia that IFS's relationship with a particular decisionmaker provided a special economic benefit or advantage not readily available to other reasonably diligent suppliers, the Court cannot conclude that the contact information for a customer or its decisionmaker constitutes a trade secret in this case.").

In sum, in the absence of evidence that Plaintiff derives value from three month old dealer grades and customer lists not being generally known to the public, the Court finds that none of the Alleged Trade Secrets constitute trade secrets under federal or California law.[4]

Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment with respect to the DTSA and CUTSA claims.

### B.    Preemption

Next, Defendants argue Plaintiff's remaining claims are preempted by the CUTSA, and thus they are entitled to summary judgment. The "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7). Where the plaintiff's non-trade secret claims "allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim," the claims may survive. *See SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (cleaned up).

In support of their argument, Defendants point to *Teva Pharm. USA, Inc. v. Health IQ, LLC*, in the court noted that "CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret." 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013). Plaintiff disagrees, arguing that it is entitled to a "separate ground" for remedy under other common law claims if its Alleged Trade Secrets do not qualify as protectable trade secrets and leaning on *Courtesy Temporary Service, Inc. v. Camacho* for support. 222 Cal. App. 3d 1278, 1291 (1990) (holding the lower court erred by not granting injunctive relief under the UCL as a separate ground from plaintiff's trade secret misappropriation claim).

However, district courts, relying on California state court precedent, have rejected this "separate grounds" approach, finding that "a Plaintiff seeking to bring a non-CUTSA claim based on the

---

[4] Because Plaintiff has failed to raise triable questions of fact regarding whether the Alleged Trade Secrets are, in fact, protectable trade secrets, the Court need not reach Defendants' arguments pertaining to misappropriation and damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

misappropriation of valuable information could avoid supersession under CUTSA by failing to allege that the information was subject to reasonable efforts to maintain its secrecy," and "[s]uch a result would subvert CUTSA's purpose." *SunPower Corp.*, 2012 WL 6160472, at *5 (internal quotations omitted). Accordingly, this Court agrees with other district courts in this Circuit that "claims based on misappropriation of information may be superseded notwithstanding the fact that the information ultimately fails to qualify as a trade secret." *Id.* at *6; *see also Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1158 (E.D. Cal. 2017) (holding the same); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (holding the same).

Thus, "the CUTSA preempts a common law claim when it is 'based on the same nucleus of facts' as a misappropriation of trade secrets claim." *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at * 2 (N.D. Cal. Mar. 1, 2017) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1033–35 (N.D. Cal. 2005)). This Court previously found that Plaintiff's claims for breach of fiduciary duty, breach of loyalty, UCL, and fraudulent concealment were preempted because they were premised on the misappropriation of trade secrets claims, and granted Plaintiff leave to amend the complaint. (ECF No. 26.) Now in their Motions for Summary Judgment, Defendants argue those same claims as alleged in the FAC are similarly superseded by the CUTSA. The key issue the Court must consider is whether Plaintiff has "alleged wrongdoing 'materially distinct' between the trade secret misappropriation and each tort claim." *Arthur J. Gallagher & Co. v. Tarantino*, 2022 WL 4092673, at *10 (N.D. Cal. July 27, 2022).

1.    *Breach of Fiduciary Duty*

In the FAC, Plaintiff alleges Stewart breached her fiduciary duty by misappropriating Plaintiff's "non-trade secret confidential and proprietary information . . . ." (FAC ¶ 99.) More specifically, Stewart allegedly "colluded to take UACC confidential information, dealers, key personnel, and engaged in unlawful and inappropriate efforts to benefit and profit from UACC intellectual property." (*Id.* ¶ 104.) Additionally, after Stewart accepted a position with Veros, Stewart attended meetings requiring travel (thereby causing UACC to incur expenses), solicited high performing UACC personnel at those meetings to join Veros, and gained confidential information from those meetings to benefit Veros. (*See id.* ¶¶ 105–11.)

Plaintiff argues that it identified numerous confidential documents that Stewart misappropriated that are not trade secrets. (Pl.'s Reply at 1, ECF No. 135.) Additionally, "[b]ecause Stewart's fiduciary duty arose from her position and role, a preemption argument does not apply." (*Id.* at 2.) The Court is unconvinced.

Like the initial complaint, the FAC contains factual allegations that suggest Stewart allegedly taking such "confidential information" was a byproduct of her alleged effort to misappropriate trade secrets. (FAC ¶ 47 ("[Stewart] is using the confidential information of UACC to enable her to form a competitive internal and external sales team at Defendant Veros Credit . . . . Stewart is misusing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | | Date | February 19, 2026 |
|---|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | | |

sensitive business information that she took from UACC to benefit Defendant Veros Credit, including by using UACC's employee compensation plans and confidential information to advise Defendant Veros Credit on key compensation metrics being paid to UACC employees.").) Although Plaintiff identified certain documents that Stewart emailed to herself as confidential but not trade secrets, Plaintiff fails to establish, or even allege, that those were the documents Stewart used to breach her alleged fiduciary duty. (*See* Pl.'s Reply at 1.)

Accordingly, the breach of fiduciary duty claim here is premised on the allegedly wrongful taking of confidential business and proprietary information that CUTSA serves to preempt. *See Teva Pharms. USA, Inc.*, 2013 WL 12132029 at *5. Unlike cases in which a breach of fiduciary claim was not superseded by the CUTSA because it was materially distinct, here, there is no such distinction between the trade secret misappropriation and breach of fiduciary claims. *See, e.g., Arthur J. Gallagher & Co. v. Tarantino*, 2022 WL 4092673, at *11 (noting that defendants hosted golf outings and dined with plaintiff's clients).

Thus, the Court **GRANTS** Stewart's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment with respect to the breach of fiduciary duty claim.

      2.     *Breach of Loyalty*

Similarly to the initial complaint, in the FAC, Plaintiff's breach of loyalty claim against Stewart and Hicks essentially repeats its breach of fiduciary duty claim. (*See* Pl. MSJ at 15 ("Here, by the same actions that breached their fiduciary duties, Stewart and Hicks also breached the duty of loyalty they owed to UACC."). Thus, this claim is similarly preempted.

Accordingly, the Court **GRANTS** Stewart and Hicks' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment with respect to the breach of loyalty claims.

      3.     *UCL*

Plaintiff alleges that it "bases its unfair business practices claim solely and entirely on the non-trade secret confidential and proprietary information taken by Defendant Stewart and Defendant Hicks." (FAC ¶ 130.) However, the FAC is vague as to what confidential information was taken that is not alleged to also be a trade secret. The only information Plaintiff identifies in the FAC as taken in violation of the UCL is the contact list Hicks emailed himself, which Plaintiff alleges is a trade secret. (*Id.* ¶ 144.)

Rather than further differentiating its UCL claim from its trade secret misappropriation claim, Plaintiff argues that Plaintiff is entitled to a "separate ground" for remedy under the UCL if the confidential information taken does not qualify as a trade secret. (*See* Pl. MSJ at 16.) However, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | | Date | February 19, 2026 |
|---|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | | |

explained above, this Court is persuaded by other district courts in this Circuit that such a limitation of CUTSA's preemption scope would subvert its purpose. Accordingly, the UCL is preempted.

Thus, the Court **GRANTS** Defendants' Motions for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment with respect to the UCL claim.

    4.      *Fraudulent Concealment*

Next, Plaintiff alleges that Stewart concealed that she had accepted employment with Veros and that her loyalty correspondingly shifted before attending Plaintiff's meetings in December 2024 with the intent to take and misuse Plaintiff's strategic and compensation materials and to use the meetings to poach Plaintiff's employees. (FAC ¶¶ 149, 151, 154.) More specifically, from November 26, 2024 through December 3, 2024, Stewart allegedly accessed and downloaded Plaintiff's "confidential information and documents onto her personal email account" with the intent to misuse them and defraud Plaintiff. (*Id.* ¶¶ 156–59.) Afterwards, Stewart failed to return the confidential information to Plaintiff. (*Id.* ¶ 156.) Plaintiff alleges "Stewart's use of UACC confidential information and documents and her continuous delay to allow a forensic inspection and for a forensic purging of UACC materials" has directly and proximately caused Plaintiff harm. (*Id.* ¶ 160.)

Considering these allegations as a whole, Plaintiff's fraudulent concealment continues to be premised on the same nucleus of facts as its other claims: Stewart's alleged misappropriation of Plaintiff's confidential information. Plaintiff fails to differentiate this claim in its Motion or Opposition briefs, but rather reaffirms that its fraud claim is based on Stewart accessing and taking Plaintiff's confidential materials that Plaintiff also alleged are trade secrets. Thus, CUTSA similarly preempts the fraudulent concealment claim.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the fraudulent concealment claim, and **DENIES** Plaintiff's Motion for Partial Summary Judgment.[5]

---

[5] Since the common law claims are preempted by CUTSA, the Court need not address Defendants' substantive arguments as to why they are entitled to summary judgment for each claim.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00065-RGK | Date | February 19, 2026 |
|---|---|---|---|
| Title | *United Auto Credit Corporation v. Jessica Stewart et al.* | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions for Summary Judgment [90] [91] [92] and **DENIES** Plaintiff's Motion for Partial Summary Judgment [104]. Defendants shall file a proposed final judgment within **seven days** of this Order.

The Final Pretrial Conference set for February 23, 2026, is vacated and taken off calendar.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                                    JRE/gz